**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| JOHN ROGALSKI and | : | |
| MARY ROGALSKI, | : | |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. 25-CV-05340 |
| | : | |
| WARRINGTON TOWNSHIP, et al. | : | |
| | : | |
|     Defendants. | : | |

**MEMORANDUM RE: MOTION TO DISMISS [ECF 23]**

**BAYLSON, J.**                                                                                                    **June 18, 2025**

This case requires the Court to review extensive allegations of wrongdoing related to

actions taken by a municipality.  Plaintiffs have complained about the municipality violating

their constitutional rights by allegedly taking property without just compensation or due process

and allegedly infringing on their right to free speech.  *Pro se* Plaintiffs John Rogalski and Mary

Rogalski filed this action on February 12, 2026, against Defendants Warrington Township,

Angela Benner, and Joseph Knox ("Am. Compl.," ECF 16).  Defendants filed a Motion to

Dismiss ("Mot.," ECF 23), Plaintiffs filed a Response in Opposition ("Opp'n," ECF 26), and

Defendants filed a Reply in support of their motion ("Rep.," ECF 28).  For the following reasons,

the Court will **DENY** in part and **GRANT** in part Defendants' motion to dismiss.

## I.      FACTUAL ALLEGATIONS[1]

Plaintiffs own a parcel of land at 503 Bradford Avenue in Warrington, Pennsylvania.

Am. Compl. ¶ 9.  They purchased the property in 1972.  Id.  Their property is bounded by, and

---

[1] The following factual allegations are taken from the Amended Complaint, documents attached thereto, and publicly available records of which this Court takes judicial notice.  See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

includes a portion of, Tohickon Lane.  Id. ¶¶ 10, 19.  In 1993, Warrington Township entered into

a utility easement agreement with Plaintiffs, recognizing Plaintiffs' private ownership interest in

Tohickon Lane and Plaintiffs' right to possession of the surface of said road.  Id. ¶ 19.  In 1998, a

non-party individual named John Shihadeh purchased an adjoining property and began

trespassing on Tohickon Lane to access his property.  Id. ¶ 27.  In 2003, Plaintiffs sued Shihadeh

for trespassing in the Bucks County Court of Common Pleas.  Id. ¶ 31.  During litigation,

Shihadeh allegedly bribed the chairman of Warrington Township's Board of Supervisors by

hiring the chairman's landscaping company for work on Shihadeh's property in exchange for the

Board condemning Tohickon Lane.  Id. ¶¶ 34–38.  Shihadeh then moved for dismissal of the

Plaintiffs' complaint in the Court of Common Pleas after the Board voted 3-2 to condemn

Tohickon Lane.  Id.  However, the Court of Common Pleas denied Shihadeh's motion for

dismissal.  Id. ¶ 39.  In 2004, Plaintiffs executed an easement with Shihadeh, giving him the

privilege to use Tohickon Lane, upon payment of $5,000.  Id. ¶ 40.

Between 2005 and 2024, Plaintiffs prevented two attempts by Warrington Township to

pave Tohickon Lane.  Id. ¶ 43.  In October of 2024, Joseph Knox allegedly supervised a

township employee defacing a "no trespassing" sign on Plaintiffs' property.  Id. ¶ 45.  The next

day, Angela Benner sent a letter to Plaintiffs stating that the Township had acquired title to

Tohickon Lane and that it will pave the road in 2025.  Id. ¶ 46.  Subsequently, Benner and Knox

directed Township employees to repeatedly deface "no trespassing" signs on Plaintiffs' property.

Id. ¶ 47.  On one occasion, Knox spray-painted over Plaintiffs' "no trespassing" sign.  Id.  In

November of 2024, Warrington Township replaced a "No Outlet" sign on Tohickon Lane and

put up a stop sign, with another sign attached marking Tohickon Lane as a "public road."  Id.

¶ 50.  In August of 2025, Warrington Township paved Tohickon Lane with police oversight and

over Plaintiffs' objection.  Id. ¶ 51.  Warrington Township did not file notice of taking in the Bucks County Court of Common Pleas nor tender payment to Plaintiffs to acquire Tohickon lane.  Id. ¶ 52.

In Count I, Plaintiffs allege a violation of the Fifth Amendment Takings Clause and seek compensatory damages in excess of $75,000.  Id. ¶ 56.  In Count II, Plaintiffs allege a violation of due process, both substantive and procedural, under the Fourteenth Amendment and seek specific performance.  Id. ¶ 58–60.  In Count III, Plaintiffs allege a state-law breach of contract and seek specific performance.  Id. ¶ 62–63.  In Count IV, Plaintiffs allege a violation of their First Amendment right to freedom of speech and seek compensatory and punitive damages in excess of $50,000.  Id. ¶ 65–67.

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim.  Mot. at 1.[2]

## II.   STANDARD OF REVIEW

### A.  Subject Matter Jurisdiction

"It is fundamental that federal courts must have subject matter jurisdiction before reaching the merits of a case."  GBForefront, L.P. v. Forefront Mgmt. Grp., LLC, 888 F.3d 29, 34 (3d Cir. 2018).  Indeed, the Federal Rules of Civil Procedure require the Court to dismiss any claims over which it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).  "Jurisdictional [issues] ... may be raised at any time and courts have a duty to consider them sua sponte."  Wilkins v. United States, 598 U.S. 152, 157 (2023) (internal quotations omitted).  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  See Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of

---

[2] Defendants did not paginate their memorandum, so the Court adopts the pagination in the CM/ECF system.

establishing federal jurisdiction rests with the party asserting its existence." (citing DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006))). "When a party moves to dismiss prior to answering the complaint . . . the motion is generally considered a facial attack." Leadbeater v. JPMorgan Chase, N.A., No. 16-7655, 2017 WL 4790384, at *3 (D.N.J. Oct. 24, 2017) (citing Const. Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014)). A facial challenge "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law," or because there is no diversity of citizenship among the parties, or because there is some other jurisdictional defect. Aichele, 757 F.3d at 358. Because Defendants' attack appears to be facial, the Court must consider only the allegations in the Complaint and documents referenced therein and attached thereto, in the light most favorable to Plaintiffs. Id.

**B. Pleading Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." Shorter v. United States, 12 F.4th 366, 374 (3d Cir. 2021) (quotations omitted). Conclusory allegations do not suffice. Iqbal, 556 U.S. at 678. As Plaintiffs are proceeding *pro se*, the Court construes their allegations liberally. Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quotations omitted).

4

## III.  DISCUSSION

### A.  Subject Matter Jurisdiction

According to the "well-pleaded complaint" rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392, (1987).  Plaintiffs' claims of constitutional violations (Counts I–II, IV) are explicitly brought pursuant to the statutory cause of action arising from 42 U.S.C. § 1983.  Am. Compl. ¶ 1.  Because relief sought depends on "the construction or application of the Constitution or federal law," the Court has federal question jurisdiction over the constitutional claims pursuant to 28 U.S.C. § 1331.  Nemeroff v. Giordano's Garden Groceries, LLC, No. CV 22-4291, 2023 WL 1767764, *2 (E.D. Pa. Feb. 3, 2023) (J. Baylson) (quoting Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199 (1921)).

Count III of Plaintiffs' Complaint seeks specific performance of a 1993 utility easement between Plaintiffs and Warrington County.  Am. Compl. ¶ 62–63.  Specific performance of an easement "is an equitable remedy for breach of contract" governed by Pennsylvania common law.  Giordano v. Claudio, 714 F. Supp. 2d 508, 532 (E.D. Pa. 2010).  Having determined the existence of subject matter jurisdiction over Plaintiffs' constitutional claims, the Court will exercise supplemental jurisdiction over Plaintiffs' state-law claim pursuant to 28 U.S.C. § 1367(a).

### B.  Sufficiency of the Pleadings

Plaintiffs have alleged three federal constitutional claims pursuant to § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).  Here,

Warrington Township, Knox, and Benner qualify as persons acting under the color of state law. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1976) (holding municipalities and other local government units are "persons" for the purposes of § 1983). "[A] municipality may be liable under § 1983 for a single decision by its properly constituted legislative body . . . because even a single decision by such a body unquestionably constitutes an act of official government policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); accord Langford v. City of Atlantic City, 235 F.3d 845, 848 (3d Cir. 2000). Thus, the sufficiency of Plaintiffs' federal question pleading rests on whether they have adequately alleged the actions of Defendants amount to plausible constitutional violations.

### 1. Takings Clause Claim

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. This prohibition applies to state and local governments under the Fourteenth Amendment. Cowell v. Palmer Twp., 263 F.3d 286, 290 (3d Cir. 2001). To state a Takings Clause claim, a plaintiff must assert "a legally cognizable property interest" and show "a taking of that property interest for public use without just compensation." Nekrilov v. City of Jersey City, 45 F.4th 662, 669 (3d Cir. 2022).

Plaintiffs have alleged they have a property interest in at least part of Tohickon Lane. Am. Compl. ¶¶ 9-11. Plaintiffs claim they "obtained title to all of Tohickon Ln." when they purchased their property at 503 Bradford Ave. because the property "is bounded by" Tohickon Lane and the "history of [Tohickon Lane's] creation" makes it private property. Id. 10–11. This is sufficient to allege at least a partial property interest in Tohickon Lane because "where the side

6

of a street is called for as a boundary in a deed, the grantee takes title in fee to the center of it."
Rahn v. Hess, 378 Pa. 264, 270 (1954).[3]

Defendants argue, pursuant to Pennsylvania law, that because "Tohickon Lane was never offered to the Township for dedication as a public street, Plaintiffs did not and could not take ownership of Tohickon Lane." Rep. at 6. However, Defendant's argument rests on a misinterpretation of the statute they cite. The statute Defendants cite states that any street that "has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, . . . shall not be opened" without the consent of the owner. P.S. Highways and Bridges § 1961. When an owner subdivides their property into lots and streets on a development plan and sells plots to purchasers, "there is an implied grant or covenant to the purchaser that the street shall be forever open to the use of the public and **operates as dedication** of them to public use." Rahn, 378 Pa. at 268 (emphasis added). Thus, the statute "fixed a time limit within which an acceptance by the public must take place." Id.; see also Kowalczyk v. Borough of Portage, 295 A.3d 752, *4 (Pa. Commw. Ct. 2023) (holding that if an offer for dedication of an alleyway was "not so accepted within twenty-one years after the dedication, the public's right to accept was foreclosed."); Pawlowski v. Borough of Barnesboro, 545 A.2d 965, 966 (Pa. Commw. Ct. 1988) ("Following the dedication of a street, there must be an acceptance by the municipality or use by the public within [twenty-one] years; otherwise, the land reverts to the abutting landowners."). The Township did not accept the dedication within twenty-one years of the street being laid out. Am. Compl. ¶ 14, 37. Thus, accepting Plaintiffs' assertions as true and drawing

---

[3] While it is not clear that Plaintiffs have a property interest in the entirety of Tohickon lane, this is not material since physical appropriation triggers the Takings Clause "regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof." Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 322 (2002).

all reasonable inferences in Plaintiffs' favor, the Court will accept that Plaintiffs have a property interest in at least part of Tohickon Lane.

Next, the Plaintiffs have alleged a "paradigmatic" taking of their property.[4] <u>Lingle v. Chevron U.S.A. Inc.</u>, 544 U.S. 528, 537 (2005) (describing "a direct appropriation or physical invasion of private property" as a paradigmatic taking). Private ownership of property, including the right to exclude, is a legally cognizable property interest. <u>United States v. Gen. Motors Corp.</u>, 323 U.S. 373, 378 (1945) (interpreting the word property to "denote the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it"). Plaintiffs allege that Defendants paved Tohickon Lane and erected a sign indicating it was a public road. Am. Compl. ¶¶ 50–51. Paving part of Plaintiffs' property and declaring it public amounts to the "government physically take[ing] possession of an interest in property." <u>Tahoe-Sierra</u>, 535 U.S. at 324.[5]

Defendants' proposition that a "[m]ere diminution in property value is insufficient" for a Takings Clause is not supported by the case law. Mot. at 4. The three cases Defendants cite in order to support their argument all involve regulatory takings rather than physical takings. <u>Penn Cent. Transp. Co. v. City of New York</u>, 438 U.S. 104, 124 (1978); <u>Pace Res., Inc. v. Shrewsbury Twp.</u>, 808 F.2d 1023, 1030 (3d Cir. 1987); <u>Lucas v. S.C. Coastal Council</u>, 505 U.S. 1003, 1015 (1992).

---

[4] Plaintiffs use the term "inverse condemnation" to refer to the "lowered valuation of their home" due to the opening of Tohickon Lane. Am. Compl. ¶ 54–55. However, courts use "inverse condemnation" to refer to a remedy by which "a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." <u>United States v. Clarke</u>, 445 U.S. 253, 257, (1980). Accordingly, the Court will liberally construe *pro se* Plaintiffs' complaint as bringing an inverse condemnation action against the Township, rather than claiming the Township's actions amounted to inverse condemnation.

[5] Defendants' § 1983 statute of limitations claims do not apply because Plaintiffs allege the taking, i.e. the paving of Tohickon Lane, to have occurred less than two years before Plaintiffs filed their suit. Am. Compl. ¶ 51; Mot. at 6.

The Supreme Court has held it would be "inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and **vice versa**." Tahoe-Sierra, 535 U.S. at 323 (emphasis added). In cases of physical takings, such as the instant case, "no matter how minute the intrusion, and no matter how weighty the public purpose behind it, [the courts] have required compensation." Lucas, 505 U.S. at 1015. Thus, Plaintiffs need not assert a diminution in property value to state a Takings Claim, although they do so. Am. Compl. ¶ 55.

After determining that Plaintiffs allege sufficient facts to show there has been a taking of a property interest, we move to the question of whether the taking was "for public use." Nekrilov, 45 F.4th at 669. Plaintiffs argue the taking was unconstitutional because the condemnation was not for a public purpose, but instead to benefit a private individual who allegedly bribed Warrington County's Board of Supervisors. Am. Compl. ¶¶ 25,[6] 26, 32–36, 42. The Supreme Court has repeatedly stated that "one person's property may not be taken for the benefit of another private person without a justifying public purpose, even though compensation be paid." Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 241 (1984) (internal quotations omitted). The government is also "forbidden from … tak[ing] property under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit." Kelo v. City of New London, Conn., 545 U.S. 469, 477–78 (2005). Indeed, Justice Kennedy observed in concurrence that "court[s] confronted with a plausible accusation of impermissible favoritism to private parties should treat the objection as a serious one." Id. at 491.

---

[6] The complaint numbers two separate paragraphs with the same number. To avoid confusion, the first paragraph numbered "24" is cited as such whilst the second paragraph numbered "24" is cited as "24*." The same is true for "25" and "25*."

Here, Plaintiffs allege multiple facts to indicate that Defendants' conduct did not stem from a public purpose.  First, Plaintiffs claim the Warrington County Board of Supervisors only approved the condemnation in exchange for Shihadeh's promise to hire the chairman of the Warrington County Board of Supervisor's landscaping company.  Am. Compl. ¶¶ 34–36. Second, though Tohickon Lane was apparently taken for the purpose of being a public roadway, Plaintiffs allege the public nature of the road is pretext and the road is only being maintained by the Township for Shehadeh's personal benefit.  Am. Compl. ¶ 42.  Third, Plaintiffs allege the Township attempted to condemn the property to end the litigation Plaintiffs had brought against Shehadeh.  Am. Compl. ¶ 34.  Based on the foregoing, Plaintiffs have plausibly alleged a government taking of private property for the purpose of bestowing a private benefit.

Finally, to state a Takings Clause claim based on lack of just compensation, a plaintiff must allege facts describing whether they were compensated at all, and if they were, why the amount they received was not just.  See Bauman v. Ross, 167 U.S. 548, 574–75 (1897). Plaintiffs in this case allege that they did not receive payment for the taking in question.  Am. Compl. ¶ 52.

Because Plaintiffs have provided factual allegations as to their ownership of the property, the taking of the property for the purpose of bestowing a private benefit, and a lack of just compensation, Defendants' Motion to dismiss Count I will be **DENIED**.

### 2.  Due Process Claims

#### a.  Substantive Due Process Claim

The Fourteenth Amendment states, in pertinent part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim under the Fourteenth Amendment's substantive due process clause in the context of

10

a land-use dispute, Plaintiffs must allege that they (1) had a property interest protected by the

Fourteenth Amendment and (2) were deprived of that interest by government conduct

that shocks the conscience.  United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA, 316

F.3d 392, 400 (3d Cir. 2003) (citing Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846, (1998)).

Among the actions described as "conscience-shocking behavior in the land use context"

are "evidence of corruption or self-dealing." *Giuliani v. Springfield Twp.*, 238 F. Supp. 3d 670,

696 (E.D. Pa. 2017) (J. O'Neill), aff'd, 726 F. App'x 118 (3d Cir. 2018) (internal quotations

omitted).  In this case, Plaintiffs' have claimed corruption surrounding the landscaping contract

awarded by Shehadeh to Warrington Township's Board of Supervisors' Chairman, allegedly in

return for the chairman's vote to condemn Tohickon Lane for Shihadeh's benefit.  Am. Compl.

¶¶ 25, 34–36, 42.[7]

Because Plaintiffs have plausibly alleged conscience-shocking behavior in the form of

corruption, they have sufficiently pled a substantive due process violation. Therefore,

Defendants' Motion to dismiss Count II of the Amended Complaint to the extent it alleges a

substantive due process violation will be **DENIED**.

### b.  Procedural Due Process Claim

To state a procedural due process claim, a plaintiff must demonstrate a deprivation of a

protected liberty or property interest without "due process of law."  Hill v. Borough of Kutztown,

455 F.3d 225, 233–34 (3d Cir. 2006).  "The fundamental requisite of due process of law is the

opportunity to be heard . . . at a meaningful time and in a meaningful manner."  Goldberg v.

Kelly, 397 U.S. 254, 267 (1970) (citations omitted).  If the plaintiff successfully demonstrates a

---

[7] Although the alleged corrupt actions took place in or before 2001, Plaintiffs' claim was not ripe until the Township deprived Plaintiffs of their property by paving Tohickon Lane in 2025.  Thus, Defendants' § 1983 statute of limitations claims do not apply to this claim.  Mot. at 6.

protected liberty or property interest, the focus shifts to "the adequacy of the remedial procedure" rather than to "the government's actual actions that allegedly deprived the individual of his liberty or property interest." Giuliani v. Springfield Twp., 726 Fed. Appx. 118, 122 (3d Cir. 2018) (internal quotations omitted). The Supreme Court has held that "at a minimum" procedural due process requires "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing." Mullane v. Cent. Hanover Bank, 339 U.S. 306, 313.

Here, Plaintiffs allege they have a real property interest in Tohickon Lane. "There is no dispute that an ownership interest in real property merits the procedural protections of due process of law." 3909 Realty LLC v. City of Philadelphia, No. CV 21-0030, 2021 WL 2342929, *6 (E.D. Pa. June 8, 2021) (J. Kenney). Furthermore, Plaintiffs allege the Township took Tohickon Lane from them, but "failed to follow the proper statutory procedures." Am. Compl. ¶ 59. Plaintiffs explain that Defendants "did not file the required notice of taking in the Bucks County Court of Common Pleas." Id. ¶ 52.

Defendants argue that the procedural due process claim fails because Pennsylvania state law provides postdeprivation remedial procedures. Mot. at 7 (citing Hudson v. Palmer, 468 U.S. 517, 533–34 (1984)). However, Hudson involved state employees depriving prisoners of personal property. Id. The Supreme Court held that, because predeprivation procedures are impracticable in the case of random, unauthorized employee takings of personal property, there is no due process violation stemming from lack of predeprivation proceedings as long as "a meaningful postdeprivation remedy for the loss is available." Id. at 533. That case does not govern here because Plaintiffs allege a premeditated physical taking where predeprivation proceedings would not have been impracticable. "The right to prior notice and a hearing is

12

central to the Constitution's command of due process" and, while the Constitution tolerates "some exceptions to the general rule requiring predeprivation notice and hearing," it does so "only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." United States v. James Daniel Good Real Prop., 510 U.S. 43, 53 (1993).

Because Plaintiffs have sufficiently alleged a lack of proper notice of Warrington Township's taking of Tohickon Lane, Defendants' Motion to dismiss Count II to the extent it alleges a procedural due process violation will be **DENIED**.

### 3. First Amendment Claim

The First Amendment, in pertinent part, provides that "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. This prohibition applies to state and local governments under the Fourteenth Amendment. Gitlow v. People of State of New York, 268 U.S. 652, 666 (1925). The Supreme Court has set forth a three-pronged framework to determine whether a litigant's free speech rights have been violated under the First Amendment: (1) "whether the speech is protected by the First Amendment;" (2) "determining the nature of the forum;" and (3) "whether the government's justifications for exclusion from the relevant forum satisfy the requisite standard." Marcavage v. City of Phila., 778 F. Supp. 2d 556, 564 (E.D. Pa. 2011) (J. Robreno) (quoting Cornelius v. NAACP Legal Defense and Educ. Fund, Inc., 473 U.S. 788, 797 (1985)).[8]

Plaintiffs allege that Defendants Knox and Benner violated their First Amendment rights by directing "township employees to repeatedly deface the no trespassing signs posted" on Plaintiffs' property. Am. Compl. ¶ 47. Defendants argue that Plaintiffs have not alleged facts

---

[8] The three-pronged test laid out by Defendants in their motion is not applicable in this case as that test, and the two cases Defendants cite, pertain to First Amendment retaliation claims which Plaintiffs are not making. Mot. at 9.

13

indicating Defendants' actions were content-based or that the defaced signs were on the Plaintiffs' property.  Mot. at 9.  In the alternative, Defendants argue that the claim should be dismissed since Defendants enjoy qualified immunity.  Id. at 9–10.

As to the first prong of the test, Plaintiffs have submitted facts sufficient to establish that their "no trespassing" signs contained protected speech.  See e.g., Daniels v. Town of Palm Beach, Fla., No. 25-CV-80368-RLR, 2025 WL 2390511, *6 (S.D. Fla. Aug. 18, 2025) (holding "private property" and "do not trespass" signs contained protected speech).

Moving to the second prong, Defendants argue that Plaintiffs fail to "assert any right of ownership" to the poll on which the signs were posted and that Plaintiffs' allegations regarding the location of the signs are "vague."  Mot. at 9; Rep. at 7.  However, Plaintiffs clearly allege that the signs defaced were on their private property by specifying the signs were located on "tax parcel 50-020-048" bounded by Tohickon Lane.  Am. Compl. ¶¶ 9, 45–49, 65.  Thus, the nature of the forum appears to be private, non-government property, according to a reading of the facts in the light most favorable to Plaintiffs.

Third, the standard for government restriction of speech on private property depends on whether the restriction is content neutral or content based.  Riel v. City of Bradford, 485 F.3d 736, 743 (3d Cir. 2007).  If the restriction is content based, then strict scrutiny applies, but if it merely restricts "the time, the place or the manner in which one can speak, [then] a very different test applies."  Id. (quoting Rappa v. New Castle County, 18 F.3d 1043, 1053 (3d Cir. 1994).  "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 163 (2015).  In determining the content-neutrality of a form of expression, "[t]he

14

government's purpose is the controlling consideration." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

Here, Plaintiffs allege that their 'no trespassing" signs were defaced with the intention "to censor their rights to proclaim that Tohickon Lane was a private alleyway." Am. Compl. ¶ 49. To support their claim of content-based government action, Plaintiffs allege they received emails during the period the signs were defaced from both Benner and Warrington's solicitor, Jeffrey Garton, informing them the Township had acquired title to Tohickon Lane and "complaining about the signs" put up by plaintiffs. Id. ¶¶ 45–49. In addition, Plaintiffs state that in the month following the signs being defaced, the Township removed a "No Outlet" sign and installed a "public road" sign at the same intersection where Plaintiffs' signs were defaced. Id. ¶ 50.

In response, Defendants do not provide the Court with any content-neutral "government[] purpose" for defacing the signs. Ward, 491 U.S. at 791. Instead, Defendants point to Plaintiffs' failure to "allege that the signs complied with applicable sign ordinances," without identifying any ordinance as legal basis for the Township's actions. Mot. at 10. Defendants' only reference to statute is to one which prohibits a person from "driv[ing] a nail or tack" into a public utility poll. 18 Pa. C.S. § 6905(a). However, in citing the statute, Defendants neither claim Plaintiffs violated the statute (remarking only that "it is not clear how Plaintiffs affix their signs to the utility poll in question"), nor that destruction of the signs constituted enforcement of § 6905(a). Rep. at 7.

Accepting Plaintiffs' alleged facts as true, and drawing all inferences in Plaintiffs' favor, there exists a plausible claim that it was the "message expressed" by Plaintiffs' signs that

15

motivated Defendants' actions.  Reed, 576 U.S. at 163.  Because Defendants actions were not content neutral, strict scrutiny applies.  Id. at 163–64.

Under strict scrutiny, the government must show that "the regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end."  Riel 485 F.3d at 743 (quoting Rappa, 18 F.3d at 1053).  In addition, the government's interest must be defined.  See Eakin v. Adams Cnty. Bd. of Elections, 676 F. Supp. 3d 449, 460 (W.D. Pa. 2023).  Defendants have not advanced arguments regarding the government's interest in defacing the signs, and the Court is not in a position to speculate about the reasoning on behalf of Defendants.[9]  Thus, the three-pronged framework weighs against dismissal.

Finally, Defendants' claim that they are entitled to qualified immunity since it is "reasonable that a Township official could have believed that removing signs from a disputed roadway" was lawful.  Mot. at 10.  "An official sued under § 1983 for an alleged constitutional violation is entitled to qualified immunity unless he (1) violated a constitutional right that (2) was clearly established when he acted."  Stringer v. Cnty. of Bucks, 141 F.4th 76, 85 (3d Cir. 2025).  Given our finding that Plaintiffs have plausibly alleged a violation of their First Amendment right, the first condition is met.  Courts have noted that "the second prong of a qualified immunity analysis—whether the right allegedly violated was 'clearly established'—presents unique difficulties at the pleading stage."  Id.  Since a complaint typically "lacks the case-specific details" required to conduct the "clearly established" analysis, "even well-pleaded complaints may not include sufficient facts to allow a court to identify the right with the requisite

---

[9] Defendants do hint at a public purpose in "opening or maintaining a roadway for public travel" in their Taking Clause analysis as well as mention in their qualified immunity analysis that a Township official may have thought "removal" of the "no trespassing" signs could have been justified on the grounds that the signs were "misleading the public about access rights."  Mot. at 5, 10.  However, neither of these claims directly respond to Plaintiffs' censorship allegations over the defacement of their signs but rather are brought up to advance points made in other arguments.  And even if these points were raised in response to Plaintiffs' relevant claim, they certainly do not constitute a narrowly tailored government action necessary to achieve a compelling state interest.

16

specificity." Id. at 86.  Hence, the Court will follow the advice that "[i]n such cases, the district court must deny the motion to dismiss and seek to resolve qualified immunity" at a later stage. Id.

In sum, Plaintiffs have stated a plausible claim that the government restricted their protected speech, in a private forum, while lacking a content-neutral government purpose.  Since no governmental interest is before the Court to overcome strict scrutiny, and a qualified immunity defense is premature, the Court has no basis upon which to conclude the alleged restriction on protected speech was constitutional.  As such, the pleadings are sufficient to state a plausible First Amendment cause of action and Defendants' Motion will be **DENIED** on Count IV.

### a.  Plaintiffs' First Amendment Punitive Damages Claim

Plaintiffs bring a claim for punitive damages against Defendants for violating their First Amendment rights.  Am. Compl. ¶ 67.  Because "a municipality is immune from punitive damages under 42 U.S.C. § 1983," the Court will **STRIKE** Plaintiffs' claim for punitive damages against the Township. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, (1981).  As for Defendants Knox and Benner, "punitive damages may be available . . . if they were acting in their individual, rather than official, capacity" and if they are shown to have acted "intentionally, willfully and wantonly, maliciously, and with the intent to harm" Plaintiffs. Psota v. New Hanover Twp., No. CV 20-5004, 2021 WL 6136930, at *35 (E.D. Pa. Dec. 29, 2021) (J. Slomsky).  Despite Plaintiffs suing Knox and Benner both "individually and in [their] official capacat[ies]," Plaintiffs do not assert facts from which malicious intent can be inferred.  Am. Compl. ¶¶ 7–8.  Hence, the claim for punitive damages against Knox and Benner will be **DISMISSED** with leave to amend within fourteen (14) days.

17

#### 4. State-Law Claim

In Pennsylvania, a claim for breach of contract must establish three elements: (1) the existence of a contract that includes its essential terms; (2) a breach of that contract; and (3) damages resulting from that breach. Silva v. Rite Aid Corp., 416 F. Supp. 3d 394, 401 (M.D. Pa. 2019).

Plaintiffs' Complaint alleges sufficient factual material to discern a plausible breach of contract. First, Plaintiffs identify a specific term of the easement by providing a citation to the contract and stating the contract protects Plaintiffs' "right to possession of the surface . . . of the portion of Tohickon Lane" bounding their property. Am. Compl. ¶ 19. Second, Plaintiffs identify a breach of the specific term of the contract by claiming that the Township "paved Tohickon Lane" even though the Township had agreed in the contract "to possess only a subsurface utility easement." Id. ¶ 51, 62. Third, Plaintiffs allege the breach resulted in damages in the form of "lowered valuation of [Plaintiffs'] home by opening Tohickon lane to the public." Id. ¶ 55. Accordingly, because Plaintiffs have alleged the requisite elements of a breach of contract claim, Defendants' Motion to dismiss Count III will be **DENIED**.

### III.    CONCLUSION

For these reasons, the Court will **DENY** in part and **GRANT** in part Defendants' Motion. An appropriate Order follows.[10]

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 25\25-5340 Rogalski v. Warrington Twnshp\25-5340 memo re DenyGrant MTD.docx

---

[10] The Court encourages Plaintiffs to retain counsel as this case proceeds because the issues raised by Defendants may be very complex and difficult for a lay person to fully understand.

18